Good morning. Assistant Appellate Defender Rachel Moran on behalf of Nicholas Santos. Good morning. Janet Mahoney on behalf of the people of the state of Illinois. Good morning. Ms. Moran, you may begin. May it please the Court, before I begin, may I please reserve three minutes for rebuttal? Certainly. Thank you. Your Honors, Nicholas was a 15-year-old high school freshman when the police arrested him, interrogated him, and charged him with first-degree murder and attempted murder. He was automatically transferred to adult court, and he is now serving a sentence as severe as any adult in Illinois, the equivalent of natural life. The United States Supreme Court has held that children are different, and laws treating them exactly like adults are flawed. This case involves the application of adult laws to child offenders in three separate contexts, interrogation, transfer, and sentencing. I intend to focus on issues one and two in the briefs pertaining to interrogation and sentencing, but I am, of course, happy to answer questions on the transfer issue as well. Turning to the interrogation issue, it is well settled that police are required to exercise the greatest care when obtaining a confession from a child, and the involvement of a concerned adult is an important element in the voluntariness analysis. Police in Nicholas's case failed to exercise even reasonable care, let alone the greatest care, when they did three things. First, they denied Nicholas's father access to him during the interrogation. Second, they gave Nicholas's mother no access to him before the questioning began and no opportunity to speak with him alone. Counsel, who is the custodial parent here? Your Honor, the legal term custodial, there's actually probably both, but he lived with his mother. So she was the custodial parent? Well, there's probably no definition of actual, no determination of actual custody because both parents were still married, and so likely there was no legal determination. But she was the mother who, Nicholas lived primarily with his mother. What we know from the record is that the father was actively involved in his life. The father was the first person that the older son called when Nicholas was arrested. The father immediately left work and tried to come first to the home and then to the station. So we know that he certainly played a significant role in life, but Nicholas lived primarily with his mother. Speaking of the father, when he came to the police station, the unrebutted evidence is that he was denied access to Nicholas for the entire day, the entire time he remained at the station. The state introduced no testimony to rebut that evidence. And the court found that, made a legal determination that the father did not need to be present. No Illinois court has sanctioned denying a biological father access to a child during interrogation. So are you asking us just to consider the issue of whether the biological father was denied access to the defendant or the parents in total? Parents in total, it's certainly a totality of the circumstances analysis, but a key factor in that is that the father was completely denied access. And this is the first case in Illinois I believe to address this kind of situation where one parent was permitted access and the other affirmatively denied. But there's no reason to believe that it, what the lower courts have held is that the presumption is that a confession is involuntary if a parent is denied access to the child. And that presumption should apply in this case. That's a longstanding presumption. This court stated in People v. Griffin, People v. Knox, and it should apply here. Isn't there some question exactly what may have taken place with the father that the people at the desk, if you will, may have been the ones who said no, but the detectives and the youth officer were not aware that the father was there? That does seem, that is the way the evidence was presented. Mr. Santos testified that it was the desk officers, he was not even allowed upstairs to where the interrogation was taking place. It was the desk officers in the lobby who kept telling him no, you can't go up. But the instructive case on that point is People v. Brown from this court. And it held that the desk officers are, that knowledge is imputed to the detectives. And the desk officers have the same responsibility that the interrogating officers do to allow a parent access to the child. So even if it was just the desk officers, which is, as Your Honor pointed out, all that the evidence suggests, that doesn't alleviate or relieve the police from the responsibility and from what they failed to do in this case, which was allow him access. Did another Supreme Court in People v. Murdoch indicate that concern adult scenario comes into play when the juvenile seems to not understand what is taking place during the interrogation, is confused or otherwise unintelligible? Your Honor, to be totally frank, Murdoch has language favoring both sides in this case. Murdoch did... My question is, doesn't Murdoch indicate that what the court needs to look at, which is the trial court, is the totality of the circumstances, and particularly whether or not, if the parent is not allowed to come in during interrogation, is whether or not the juvenile is having trouble understanding what's going on during interrogation. I believe what Your Honor is referencing is the language that says it is most crucial, the concerned adult is most crucial when the juvenile seems not to understand what's happening or seems to have trouble understanding the process. But they never said... Did that happen here? Your Honor, we don't know. There's no affirmative indication one way or another. Nicholas said... Did the defendant have any previous history with the criminal justice system? None whatsoever, Your Honor. He was 15 years old. He had never so much as been arrested, let alone been to a police station. And he did say he understood the Miranda rights. He was never told... The officers never made any effort to explain them more thoroughly, to explain what it meant to be charged as an adult. They admitted they never told him what sentence he could possibly face. And as Your Honors are aware, this is prior to video interrogation, and so unlike the court in Murdoch, we don't have the benefit of that in this case. We don't know how he appeared. So to get back to Your Honor's question, there's not affirmative indication that he absolutely did not understand, but there's certainly some evidence suggesting he may not have. There's the two forensic psychologists who examined Nicholas to determine whether he understood Miranda, and they both said they could not make that determination. Shouldn't we have something affirmative in the record to indicate that he did not understand? I mean, it was more than once. It was possibly four or five times he was given the warnings, correct? Yes. To answer the first part of that question, it's the state's burden to show that he did knowingly and intelligently waive Miranda. And here, we basically have an absence of evidence. And so, yes, it would be ideal if there was some evidence, but that's the state's burden, and the psychologists testified they didn't know whether he would have understood Miranda. And the detectives admitted, it's a mixed bag. The detectives admitted they did give him Miranda rights. They said that. And he said he understood. But they acknowledged they didn't make any effort to explain them. They didn't ask Nicholas to say, to repeat the rights or say what he thought they meant. They didn't explain what it meant to be charged as an adult. So there's a lot they failed to do here. And it's not just this one thing, though. It's the totality, as Your Honor pointed out, it's the totality of the circumstances. And we do, we have a child who's never been interrogated before, who has no contact with the police system at all. He's held for 23 hours, which the court in Murdoch said that seven hours is a lengthy time for a 16-year-old. Here, it's 23 hours. No, he was not interrogated terribly long at any point, but he had little opportunity for sleep. He was arrested at 11.30 p.m. He's interrogated at 2.30 a.m., again at 6, and 6 a.m. is when he makes the first somewhat inculpatory statement. And then he's interrogated briefly at three other times throughout the day. So he couldn't have had much opportunity to sleep. Well, Counsel, isn't it significant that there was a youth officer present at the time of the interrogation, even though the father was not allowed? There was still someone there to advocate on behalf of the defendant. Isn't that correct? Well, if Your Honor uses the term advocate on behalf of the defendant, that's certainly not what the youth officer did. The youth officer was present. She did virtually nothing. She called herself an investigator. She was a detective. And there are two lines of authority in Illinois as to what a youth officer should do. At a minimum, it's clear a youth officer must at least ascertain whether the child wants to speak with his parents and give them, and this is critical, an opportunity to speak with him before questioning. And that is across the board. Every case that speaks to youth officers uses the term prior to questioning. The whole point of a concerned adult, whether it be a parent or a youth officer, is not just that someone sits there and makes the child feel comfortable, but that they ascertain whether the child should actually waive his Miranda rights and speak with police, or among other things. Counsel, factually here, don't we have a situation where he misrepresented to the police his age? They assumed they were dealing with someone of a greater age, and then they discovered that he, in fact, was a juvenile at that point in time. Then they contacted his family, correct, his uncle, who then reached out to the other family members to make sure that they arrived. And then we got the juvenile officer, so the interrogation didn't start just once the officer or the parents weren't there, right? Your Honor, we do. At 2.30 a.m. Nicholas said he was 17, and that just speaks to his lack of sophistication that he somehow thought it would be better for him to appear older. So we are not faulting the police for not calling the police at 2.30 a.m. That's his fault. However, at 6 a.m. when the first interrogation happened, the unrebutted evidence from Nicholas's mother is that she arrived before that, and she asked to speak with Nicholas before the questioning began, and the police said no. They said wait until later. They did bring her up when the questioning began, and admittedly, she was there for every interrogation after that. But they did not give her an opportunity to speak with him beforehand, and that's crucial. In People v. McDaniel, this Court said that police cannot deny a parent access to a child before questioning. People v. Griffin, People v. Knox, that's not a disputed point. The parent must be allowed access before the questioning, and there is no evidence that that happened. And it's not just the mom saying that. The detectives admitted we didn't give her access beforehand. The youth officer admitted, I didn't even ask if the mom wanted to speak with Nicholas or if Nicholas wanted to speak with his mom. And the youth officer also didn't. She didn't speak with him alone. She just gave him his rights before the 6 a.m. interrogation, and then she sat in on the following. I'm interested in your third issue. Could you address that? The automatic transfer issue, Your Honor, or sentencing? No, you said you want to deal with sentencing. Yes, Your Honor. I apologize. It's issue two in my brief, which is somewhat odd. In Miller v. Alabama, which came down after the opening brief was filed, the United States Supreme Court drastically shifted the legal landscape of sentencing for children, and it held that a mandatory life sentence for a child was unconstitutional. It also held that a discretionary life sentence should be rare and uncommon and imposed only on the most incorrigible child offenders. In Miller, were we dealing with an accountability theory? Was there a life without parole based on an accountability theory, not like in this situation here with the Santos case? Two answers to that, Your Honor. One of the cases was accountability in Miller, and one was not. So the court in no way limited its holding to accountability. I believe it was Cuntrell-Jackson, the companion case, that was accountable, but the actual Miller holding, that child was a principal. And it's undisputed that Miller applies to the principal as well as to the accountable. The court didn't limit itself in that sense at all. The only difference between Nicholas and the children in Miller is that he received a term of years sentence, which is the functional equivalent of natural life, rather than an actual natural life sentence. Illinois, no court in Illinois. And it wasn't, there's no mandatory element. That's kind of an interesting question, Your Honor. Our position would be that the mandatory minimum was 51 years. The state's position is actually that the mandatory minimum was 85. The court believed the minimum was 51. And so Your Honor is correct that the court, the court imposed a sentence above what, well above what it believed was the minimum. But the court didn't have the guidance of Miller when it imposed that sentence. It didn't have the United States Supreme Court saying that a life sentence at all, even discretionary, should be rare, uncommon, and even for the most incorrigible offenders. And so the court didn't have the law that now guides this court and the trial court if a resentencing were to happen. Additionally, Illinois has not yet addressed a de facto life sentence, but other courts have. California, the Supreme Court, the Iowa Supreme Court, and the Colorado Appellate Court have all held that term of years sentences, even when aggregate, even when consecutive and involving multiple offenses, are unconstitutional under Miller. And in state versus null, which is the Iowa Supreme Court's recent decision, that involved a 52-year sentence. So very similar to the 51-year mandatory minimum in Nicholas's case. And the Iowa Supreme Court said that 52 years is unconstitutional under Miller. And it said that... For what? The prospect of 52 years for a murder and a robbery. So it was two offenses, consecutive sentences. Accountable or... I don't believe so, Your Honor. I believe the child was the principal. And it was a 16-year-old offender in null, the Iowa case. What the court said is that the prospect of geriatric release is not sufficient. That's not what Miller had in mind. When Miller said children are categorically less culpable, it meant that they must have an opportunity, a meaningful opportunity, to quote the court, for release. Nicholas has no meaningful opportunity for release. And even if this court looks beyond the simple holding in Miller and looks at the analysis, it absolutely applies in Nicholas's case. Nicholas was a 15-year-old... The court in Miller said that lower court sentencing courts should look to factors such as whether the child had previously been involved with police, what the circumstances of the offense are, whether the child has any possibility for rehabilitation. Whether... And they said that adolescents are specifically less culpable because they are more likely to be impulsive, to take risks, and to try to impress their peers. That's exactly... That's virtually the definition of Nicholas's case. He was a 15-year-old. He had no experience with the law, no criminal history or juvenile history. And according to the state's evidence, even taking it completely as true, Nicholas went along with his older 18-year-old co-defendant because he wanted to impress Jonathan Pena. Jonathan Pena was a gang member. Nicholas was not. Jonathan came up with the idea. Nicholas did not. Jonathan provided the gun. Nicholas did not have a gun. And he did it because he wanted to look tough. That is exactly what Miller is talking about when it says children should not... Of course it's a terrible thing. There's no dispute that. But it doesn't mean that this child is incorrigible. And there is frankly no evidence in this case to suggest that he could not be rehabilitated. What about people versus Quintana, which indicates that the court must also look at the seriousness of the offense, seriousness of the crime? It should, Your Honor. And this was... Every murder is a serious crime and a terrible crime. But when the court... It can't look at it as if he was an adult. We're not asking this court to ignore the reality of the terrible offense that occurred. But we are asking it, as it must under Miller, to look at whether Nicholas has the potential to be rehabilitated and whether he should be afforded that opportunity at some point in his life. He's already served 10 years. There's no dispute it was a serious crime. But he should have an opportunity to be rehabilitated. Did the trial court not consider rehabilitation? I know you... That she didn't look at it through the lens of Miller. But is there any indication she did not consider rehabilitative possibilities? What I would say is that she did not consider it the way she should have. We're not saying she completely refused to consider that. Well, how did she consider it? Well, it's hard to say. What she did obviously consider is his age. She said she considered his age. And we will accept that statement from the court. She didn't say, she didn't discuss at length his rehabilitative potential or his lack thereof. She certainly never made a finding that he was not capable of being rehabilitated. She simply didn't look to the same factors because she didn't have the guidance of the court. She wasn't told, she didn't have a Supreme Court opinion saying this is what you need to look at. And so she looked at it in the factors the same way you would an adult. She balanced the seriousness of the offense, presumably, with the potential for rehabilitation. And she came out on the side of saying this is a very serious offense and he should be punished for it. But she treated him like an adult in that sense. And that's what she can't do. Your Honors, in the opening brief, which was filed before Miller, Nicholas simply requested the relief of a reduction of sentence. Because Miller was filed and because Miller was decided after the opening brief and because Miller so drastically shifted the sentencing landscape for children, what we would ask is that this court remand for a new sentencing hearing at which he could raise many of the claims that are now being raised by children who have been sentenced and whose appeals have been litigated post-Miller. For example, the Illinois Supreme Court in People v. Patterson, which will be addressing arguments such as whether mandatory consecutive sentencing is appropriate for children, whether the mandatory firearm enhancements are appropriate for children, things like that. So a variety of sentencing arguments are now being raised and they're percolating but they haven't been yet addressed. And I absolutely acknowledge they weren't raised in this case because it was filed pre-Miller. So rather than a reduction of sentence to 51 years, we would ask that this court remand for a new sentencing hearing and for an opportunity to raise those arguments. I have one more question then. In the court's consideration of sentencing, are you arguing to us that the court abused her discretion when the sentence was imposed? Yes, Your Honor. We are arguing that. But it's different than a standard abuse of discretion argument because the law has changed since then. And so we are asking this court to. It could find that even under the law in existence in 2008, I believe, or 2009 when the sentence was imposed, that the court abused its discretion. So is our standard review here regarding the sentence an abuse of discretion? Ordinarily it is, Your Honor. We would invite this court to apply a de novo review because it involves a matter of law that the court had no access to when it imposed the sentence. And so we would ask this court to review de novo. But we would acknowledge that typically a sentencing argument or a sentencing that the court imposed when it's legal is reviewed for an abuse of discretion. Okay. And the process that you indicated the court stressed during sentencing, did the court clearly state on the record what was being considered and what was not being considered in sentencing? Not in great detail. The court did make some acknowledgments. The court did state on the record that it was considering his age. And so we're not contesting that point. It did state that it considered his age. It heard sentencing arguments. It didn't deny the parties the right to argue or anything like that. But it did not make thorough finding as to the circumstances of the offense, the rehabilitative potential of Nicholas, the things that Miller is telling courts it must consider. All right. And, Your Honor, People v. Quintana, I believe the court doesn't have to go into great detail in terms of sentencing. Is that correct? That's correct, Your Honor, yes. But here, again, the problem in that case is that the court not only, it didn't go into great detail, which would simply be helpful, although it's not illegal. But the problem is that the court didn't, it couldn't consider, it's not even the sentencing court's fault. It couldn't consider the appropriate factors because it wasn't told to do that under Miller. Thank you. Thank you. Good morning. Janet Mahoney on behalf of the people of the State of Illinois. Good morning. The relevant inquiry when speaking to youthful offenders is whether there's a concerned adult present. And in this case, there were two concerned adults present in the room at the time to ensure the voluntariness of the confession. His mother, the custodial parent, and a youth officer. The fact that the defendant's father may or may not have been in the police station asking to have access to the interview room really is relevant because you did have two concerned adults in the room looking out for defendant's best interest. That is the inquiry. Counsel, I have a question regarding that issue. The defense raises it and indicates that the father should have been allowed in. Is there any case law on point with regards to where you have a situation where you have two parents present and only one is allowed into the interrogation room? No, there isn't. Absolutely not. Again, it was that there's a concerned adult there and the mother was there. All of the cases that counsel speaks about deal with where there's a parent in the police station but no parent in the interrogation room. Or the youth officer who was in the interrogation room was actually actively investigating the case about which they were talking. In this case, the youth officer was not involved in the investigation of this case. The mother was in the room. The mother was given access to the defendant. The mother was given the opportunity to confer. She just didn't seize that opportunity. They didn't need to spell it out for her. Hey, you might want to go over to the side and talk to your son about this. And you can tell that they gave her the opportunity to confer when she wanted to because at the time they asked the defendant whether he wanted to give the videotaped statement. She interjected and said, I'm not comfortable with that. They said, would you like to confer with him? And they gave her the opportunity. They conferred. And at the end of that, they told the officer that they were going to leave it as the oral statement. So they absolutely did honor her right to confer with him when she wanted that. As for the knowing and intentional waiver of Miranda. Counsel, if I understood right, stated that there was evidence of a refusal to allow her to speak to Nicholas, the mother, before the next interview or the first interview where she was present. And we had the assistant state's attorneys and the police officers and the chief officer testify that that didn't happen. So it was a matter of credibility and then the judge clearly didn't accept what she was saying. But counsel did raise the issue that there was a period of time, I believe it was an hour, from the point in time when the mother arrived at the station before she was able to talk to the defendant. What does the record indicate as to why there was an hour gap between the point in time when she arrived at the station until when she was allowed into the interrogation room? It doesn't indicate any reason why. All it does indicate is that before the 6 a.m. conversation started, she was in the room. She was present when Miranda started. She had the opportunity to speak to him at that time or stop anything if she wanted to or ask any questions if she wanted to. She chose not to in this situation. The knowing and intelligent waiver of Miranda. I'm sorry to interrupt you again. But going back to the concerned parent, we raised the issue about people versus Murdoch. Could you address that with regards to the court indicating that the concerned parent issue should only be considered by this court if there was some evidence of misunderstanding or not understanding what was going on in interrogation or some confusion? Yes. The concerned adult requirement is there so that you can ensure the voluntariness of this confession, that he understood what was going on. It wasn't ignorance. It wasn't fright. It wasn't the product of fantasy. And it's only one factor in the totality of the circumstances. We have cases where there is no concerned adult in the room at all and the voluntariness of the statement is upheld. And that is perhaps what Murdoch is speaking to, that, yes, it's an important factor, but it doesn't mean that the absence of a concerned adult or the absence of the father, even though the mother and the youth officer are there, mean that this statement is involuntary. Absolutely not. You look at it as you say the youth officer was not actively involved, then who would have been there to determine whether or not the individual was frightened or whether or not they didn't have experience with the system in order for them to have made an intelligent acknowledgment of morality? She was actively involved as a youth officer. She was not actively involved in the investigation. She didn't know who the victims were or the potential defendants or the facts of the case in that respect where she was interviewing people or putting people in lineup where the other cases when they speak about a youth officer being actively involved in the investigation and therefore not acting as youth officer, it's because they were trying to gather evidence against the youthful offender. In this case, she wasn't trying to gather any evidence against him. She was there to make sure that the statement was voluntary. That was her only role in the room. So she was actively involved in that respect for his benefit. As to the knowing and intelligent waiver, the people presented evidence that Miranda rights were read to them several times and each person who read the Miranda rights to them believed that he understood them and that he wasn't confused in any way whatsoever. After having presented the evidence on that, the preponderance of the evidence standard by the people was met, the burden shifted to the defendant at that point. It doesn't stay with the people all the way through. Once they meet that preponderance standard, it shifted to the defendant and he didn't present any evidence that he didn't understand them or he couldn't understand them or he didn't know what they were. And so therefore, there was a knowing and intelligent waiver, the people presented evidence to prove that in this case. Now, as to the sentencing issue, the United States Supreme Court in Miller v. Alabama stated that mandatory life sentences for youthful offenders are unconstitutional because you didn't consider their age. You need to consider their age. That's what they stated. They never stated that natural life sentences are always unacceptable. They did not state that in any way, shape or form. They stated you need to consider the age. You need to consider the facts of the crime. And that is what the judge did in this case. She considered his age repeatedly. She stated in her findings she considered his age. That's all that she considered. And doesn't Miller require more? All the attendant circumstances. She presided over the trial. She knew the facts of the case. She observed the defendant every day in court. There's nothing on the record to indicate that she considered anything other than age. There's nothing that says that she considered rehabilitation, that she considered that he came from parents who were both involved actively in his life. Any of those things. I mean, I didn't see it on the record. Well, she possessed the pre-sentence investigation report. She read it. And we need to, in the absence of any evidence to the contrary, presume that she considered all of those factors in the pre-sentence investigation report. She saw the parents in the courtroom. They testified about the relationship with him. She knew about his criminal history. She presided over the trial and the facts of the case. She made a comment about how he may have been young, but he wasn't so young that he wasn't capable, based on what she had seen during the course of the trial, that he wasn't capable of making his own decisions. So there were a lot of circumstances that she considered before she sentenced this defendant. And she was aware of his age. And she could have given him 20 years for the murder. She gave him 45. So, clearly, she believed that there were more important factors other than his age that came into play here. Now, there was a motion. Counsel, can I interrupt you for a minute, though? Defense has asserted that this is, in effect, a life sentence. So shouldn't we use the same criteria that was set out by the Supreme Court in Miller as to these circumstances involving this case? Well, Miller did not extend beyond a mandatory situation of natural life. It is limited to that situation whatsoever. However, the court in this case did do exactly what the Miller court case wanted it to do. It wanted these courts to consider the age of the youthful offender. And she did that affirmatively in this case. There was a motion to reconsider the sentence. And in that written motion, counsel cited the Roper case, which was the beginning of all of these youthful offender sentencing cases. And referred to the fact that he was a youthful offender and that he wasn't as mature or responsible as someone who is older. And the court considered all of those very same arguments that are being made here at that motion to reconsider and still said, this is an appropriate sentence given the crime that we have here. But wasn't Miller, I mean, I'm sorry, wasn't Roper involving a death penalty? Roper was the death penalty, but it began the whole argument about how juveniles should not be treated the same as an adult because they're immature, because of their brain development, because they're simply just too young. And it is the exact same arguments that then went into the Graham case and then went into the Miller case. Very same theme. They're just extending it to a different situation. They made it very clear that natural life in prison for a youthful offender can be appropriate in certain circumstances. They just wanted the age to be considered and the circumstances of the crime to be considered. And that was what was done in this case. As for the Iowa Supreme Court, the case of Null, the courts have never talked about, the United States Supreme Court has never spoken about nor did the Null case talk about a meaningful opportunity for release. The focus is, did you consider his age? Did you consider what he did during the course of the crime? Did you consider all of the circumstances? In fact, in the Null case, they stated, nothing that the Supreme Court has said in these cases suggests trial courts are not to consider protecting public safety in appropriate cases through imposition of significant prison terms. It bears emphasis that nothing in Roper, Graham, or Miller guarantees that youthful offenders will obtain eventual release. The focus is not whether... What about your opponent's argument that this court did not consider the circumstances of the crime in light of the fact that her argument being that the defendant was trying to impress an older gang member, though he himself was not a member of the gang, that he was in essence, you know, trying to show off that he was tough. There's nothing to indicate that this court considered those circumstances of the crime. Actually, the court did consider those circumstances. First, the court heard all of that evidence during the course of the trial. And at sentencing, the court made the comment, I understand that you're 15, but given the facts of this case, you were capable of making your own decisions. So the court did consider all of that. The court considered, again, age. Age. And that he could make his own decisions. Because of his age. Well, no, given who he was, given who she observed during the course of the trial, given the evidence that she was presented with. She considered those facts were before the court. She was acutely aware of them. She did not reject them. She did not ignore them. She made no comment on the record about them either. The court isn't required to make comment on everything that she's considering in coming up with this. She considered the seriousness of the crime. She considered that the defendant could make his own decisions. So in that respect, she did consider that. And just because she didn't weigh those factors the way that defense counsel might like them to be weighed, or perhaps even a viewing court might like them to be weighed, she did weigh them. And absent some abusive discretion that you can find, that has to stand. Who has the duty to show us that she weighed those factors? She was presented with the evidence. It's presumed that she considered the evidence before her and in considering. Who has the duty to show this court that she considered those circumstances of the crime? Is that the state's burden? No, it's a presumption that she did absent a showing that she did not. And that then would be the defendant who would have to come up with that. Absent a showing that she did not consider all of the relevant factors that were before her, it is presumed that she considered those factors. Where did you get that? Interpretation? No, absolutely not. She's presented with all of this evidence. She has the pre-sentence investigation report. She has the facts from the crime. She witnessed all of the testimony. She witnessed the defendant. She witnessed the sentencing hearing. She was presented with that very same argument during the course of the trial. She heard his confession presenting that very same evidence during the course of the trial. She weighed all of the evidence before her. And just because she didn't state on the record that I considered A, B, C, and D, doesn't mean she didn't consider A, B, and C, and D. It is presumed that she considered A, B, C, and D in the absence of a showing that she did not. And what's our standard of review here regarding the sentencing? Abuse of discretion. And it is the State's position that the holding in Miller v. Alabama simply doesn't apply here because, number one, it's not a mandatory life sentence. Number two, it wasn't a mandatory sentencing situation. And number three, Miller wanted the courts to consider H in the surrounding circumstances, and that is what the court did here. Did the trial court consider, since there was testimony throughout the trial, about the defendant wanting to be a member of Mr. Pena's gang or the gang that Mr. Pena was associated with? That evidence was presented to the court during the course of the trial. Was it presented at the sentencing hearing? I don't know that. I don't know that, but she did have knowledge of that fact. It was part of his confession that was presented to the court. She had that information. Gang history would have been in the pre-sentencing investigation. There would have been something in there if he answered the questions. I can't remember off the top of my head whether he answered that question or not. But she was aware of the fact that he wanted to impress his co-defendant, and he took the gun and he did the shooting. There's also in the record an allegation that the defendant shot at Officer Grassy or Gracie. Was he ever charged with that offense? Yes, he was. He was charged with attempt murder. And what happened to that? Prior to the start of trial, prior to jury selection, the people requested to amend that indictment to indicate that William Grassy or Gracie was a police officer performing his official duties. And the court denied that request, even though there was no discretion to deny that request because it was prior to jury selection. They went to trial. He was convicted of the attempt murder, but he was also convicted of the aggravated discharge of a weapon in the direction of a police officer executing his official duties. So essentially what was proven is that an attempt murder of a police officer with the use of a gun. And he was sentenced to 10 years. And he was sentenced to 10 years as if it were a regular attempt murder without a gun, even though there was a jury finding on those elements. Consecutive to the... Yes. Unless the court has any other questions, the people request that you affirm the conviction and sentence. Thank you. Thank you. Thank you. May it please the court. I have a few brief points, two with respect to the confession issue and two with respect to the sentencing. As to the confession, I believe Justice Reyes asked the state whether the mother, about my contention that the mother testified she was denied access. And the opposing counsel answered that the state's witnesses denied that and the trial court made a credibility finding in their favor. That is inaccurate. The ASA and the officer, both the detectives testified that they did not know whether the mother was there beforehand. So they, in essence, said it wasn't me that denied her access, but they never testified that she was not denied access. And as we know, it could easily have been the desk officers who were already showing reluctance to the father. It could have been them. That's in the record at pages ZZ8 through 10. So there is no evidence that the mother was not denied access. Do we know if the interrogation was proceeding before the mother went into the interrogation room? We are not contending it was. That was a disputed point and we're not contending it. However, the state also said that the officers are not required to spell it out for the mother as to whether she wanted to speak with it. That's actually contrary to case law. In People v. Murdoch and in In Re J.O., the court held that the burden is on the police, specifically the youth officer, to ask the parent if she wants to speak with her child. And Detective Musial admitted she did not ever do that. The other point with respect to the confession is to Your Honor's question about whether the father has to be present. Was it J.O. or G.O.? Those are actually two different cases, Your Honor. I'm referencing J.O., which is the second district case provided in the opening brief. Your Honor also asked whether both parents are required to be present, and we've admitted that's an open question in Illinois. However, in Murdoch, this court said that parents, plural, the police are required to inform the juvenile's parents. It used the plural. In McDaniel, this court used the plural and said that if the parents indicate interest in speaking to their child, they should be allowed to do so. And in J.J.C., the second district appellate court said that the parents, guardians, and concerned adults all have the right to be present and to speak with the child before questioning. Turning to the sentencing issue, Miller is not just about age, and it's not limited to mandatory life sentences. Mandatory life sentence was the specific factual scenario, but Miller talked at length about the circumstances of adolescence, not just the fact of a child's age. The Illinois Supreme Court has extended Miller all the way to the context of whether a minor has a right to an abortion without the parent's notification. That's in Hope Clinic v. Flores. In the Illinois, that's a totally different context outside of sentencing altogether. And the court cited to Miller to talk about the unique immaturity and transient characteristics of an adolescent that indicates that an adolescent should be given greater care. As to Your Honors, Justice Hall's question as to whether we presume that the trial court considered the appropriate factors, we don't presume that we should, this court should not presume that the court considered the appropriate factors when it was not even told what factors to consider. That might work if Miller had been decided beforehand and the trial court had been aware of it. But it wasn't. It was decided afterwards, and this court should not assume that the trial court was able to predict the future about what the United States Supreme Court would say are appropriate considerations and necessary considerations for sentencing. Lastly, Your Honors, we would ask this court's permission to cite as additional authority a case decided just two days ago, which I don't want to discuss because I don't think it would be fair to opposing counsel. But the Supreme Court of the Virgin Islands just issued a decision specifically dictating to trial courts what factors they must consider pursuant to Miller when resentencing. And I believe Your Honor looks a little skeptical about the Supreme Court of the Virgin Islands, but it was applying Miller to resentencing for a child who was given a life sentence before Miller. And it lays out at length what factors the court should consider. I'm not skeptical about the Supreme Court of the Virgin Islands. I have met them. They are honorable. So we would simply ask this court permission. What is the name of the case? I believe it's People v. Williams, Your Honor. It just was posted on Westlaw yesterday afternoon. So I apologize. Williams? I believe it's Williams. And I can provide a question. It's Williams v. Virgin Islands. I apologize. You cannot discuss it because it would not be fair. It's Williams v. Virgin Islands. I have a question regarding the sentencing hearing. I asked the State with regards to the issue about the gang involvement. Yes. Was that raised during the sentencing hearing? I don't believe that was specifically discussed at the sentencing hearing. I apologize, though. I don't have verbatim notes as to whether it was. But it was part of the testimony during the trial? Yes. It was part of the – primarily, actually, the motion to suppress. But I think it came out at sentencing that certainly that Nicholas was not a member of the gang and that his older co-defendant was. Okay. Thank you, Your Honor. Thank you. And I'll take it under advisement.